that you were appointed under the Criminal Justice Act, is that correct? That's correct, your honor. The court appreciates your willingness to accept the appointment. Thank you, judge. You may proceed. Thank you. May it please the court, counsel. My name is Kate Rahel and I'm here on behalf of the appellant in this case, Carlos Valquier. Your honors, this is a case about holding the government to the same standards of accuracy and precision that are expected of criminal defendants when it comes to presenting evidence regarding safety valve eligibility at a sentencing hearing. Mr. Valquier, the appellant in this case, pled guilty to conspiracy to distribute methamphetamine and part of his plea agreement contained a provision that if he qualified, the government would agree to recommend relief under 18 U.S.C. 3553F, which is more commonly known as the safety valve provision, which would allow Mr. Valquier to be sentenced below the 10-year mandatory minimum that the statutes provide in this case. At the sentencing hearing, the government argued that Mr. Valquier had not met the fifth prong of the safety valve provision, which is providing complete and truthful information. To support its argument that Mr. Valquier had not done this, the government provided a summary of what it believed to be Mr. Valquier's proffer statements, then offered by way of the government attorney's best recollection, and it offered the testimony of one agent who had been involved in the case. Based on this information, the court concluded that Mr. Valquier had not been truthful and therefore did not qualify for the relief he sought. This procedure that was undertaken at the sentencing hearing resulted in four issues which we have addressed on appeal. First, that the government breached its end of the plea agreement by not recommending the safety valve relief when it knew that Mr. Valquier had been truthful and complete and when it was unable to present reliable, accurate evidence to the contrary. Second, that the government misrepresented statements made by the defendant and by his co-defendants, which resulted in substantial prejudice to Mr. Valquier in that the court relied on those statements to deny him this relief. Third, that the court erred when it permitted unreliable hearsay statements to be proffered by way solely of the government attorney's recollection, not by means of a transcript provided or a witness. And fourth, that in relying on this collectively unreliable evidence, the court erred when it found Mr. Valquier ineligible for safety valve relief. Your Honors, the threshold issue in this case is that Mr. Valquier's plea agreement, in addition to the provision regarding safety valve recommendation, also contained an appeal waiver. That appeal waiver does not bar the appeal in the present case for the reason that the government breached its end of the plea agreement. The government had agreed that it would recommend safety valve relief if Mr. Valquier otherwise qualified. The first four prongs of that test were not disputed at the sentencing hearing. The sole issue was the truthfulness, and for the reasons contained in the remaining arguments, the government was unable to determine that Mr. Valquier had been untruthful and should therefore have upheld its end of the bargain in recommending that he receive that safety valve relief. The reason that... Why wouldn't that be barred by the appeal waiver? Can't he waive his right to appeal a claim regarding breach of the agreement? Yes, Your Honor. This court's upheld appeal waivers in numerous other cases, but has also stated that under contract principles, the government's also bound by the plea agreement. And where the government breaches its end of the agreement, the defendant is also not then bound by his agreement and should be permitted to appeal if there's an appeal waiver or be permitted to withdraw his plea agreement, whatever the relief should be. So in this case, because the government did not uphold its end of the bargain of recommending safety valve relief when Mr. Valquier qualified, the plea agreement was breached and Mr. Valquier is not bound by that appeal waiver provision. What case says that if you're raising a breach claim, that you can avoid an appeal waiver? Your Honor, I believe it's the sales case, S-A-Y-L-E-S. I don't have the site right off hand, but I believe it was cited in our briefs before this court. From our court, sales? I believe it's an eighth circuit case, Your Honor. Thank you. Was this breach claim raised with the district judge, or did you just argue the merits of the safety valve in the district court? You or whoever was there. Your Honor, only the merits of the safety valve were argued in front of the district court. That's what I thought. Okay. So it would be a plain air question on breach. Is that right? Your Honor, I believe that the issue wouldn't have even arisen because it was an appeal waiver provision that was at issue. Mr. Valquier was not seeking to invalidate or void the entire plea agreement at his sentencing. He simply wants the government to be held to its end of the agreement and wants that enforced on appeal. So the issue of the appeal waiver was never raised before the district court. No, no. I didn't mean was the appeal waiver raised in the district court. Was the argument that the government breached the plea agreement raised in the district court? No, Your Honor. It was not. The sole issue... So would it be a plain air question for us whether there was an obvious breach as opposed to a de novo question or a clear air question or whatever it would be if you had raised it in the district court? Your Honor, although it wasn't expressly raised in those terms in the district court, Mr. Valquier did object to the government not recommending the safety valve and to the procedures that the government undertook to attempt to prove that. So I believe he did preserve error on the issue of whether the government upheld its end of the plea bargain as it related to recommending the safety valve in this case. Is that your alleged breach by the government of the plea agreement, the fact that it did not recommend the safety valve relief? Yes, Judge. The plea agreement provided that if the defendant qualified, the government would recommend safety valve. It was not optional if the defendant qualified. Given the evidence that the government was unable to present and that the defendant met his burden of proving his truthfulness, the government should have upheld and was required to recommend safety valve relief under that plea agreement. That part of the plea agreement describes the appellant's obligation as truthfully disclosing all information and evidence that he has concerning the offense and relevant conduct, right? Yes, Judge. And also, if he otherwise qualifies for safety valve relief. Correct, Your Honor. The other provisions of safety valve were not at issue in this case. It was solely the truthful and complete disclosure of information that was disputed at the sentencing hearing. So if, in fact, the appellant did not truthfully testify or concealed information or had lied in seeking this relief, then the government is freed from its obligation, right? That's correct, Your Honor. In this case, Mr. Valquier did provide truthful information and met his burden of proving so at the sentencing hearing. The government attempted to refute that evidence, but the evidence that it presented supposedly to contradict Mr. Valquier's assertion that he'd been truthful was not reliable and did not disprove Mr. Valquier's truthfulness. The first way that the government's evidence proffered at the hearing failed was that it contained incorrect summaries of Mr. Valquier's proffer statements. The government attempted to say that Mr. Valquier had said that another co-defendant in the case was sort of the mastermind of this. However, the proffer agreement, which was accepted as Exhibit 2 at the sentencing hearing, revealed that, in fact, he had said another non-party that resided in Mexico was actually the one in charge of the case. The second way that the evidence was unreliable was by means of the proffered testimony from the co-defendant's trial that was solely from the recollection of the government attorney's witness or any other form of reliable evidence. Had Judge Rossiter presided over that other trial? That's correct, Your Honor. However, Mr. Valquier and his attorney were not present at that trial, had not had a chance to review a transcript from that trial, and Judge Rossiter stated that he generally thought it was correct to his recollection. He also was not actively reviewing the testimony to say that it was 100% correct, as could easily have been remedied simply by offering a transcript. And with that, I'll reserve my remaining time for rebuttal. Thank you. Very well. Mr. McGee, we'll hear from you. May it please the Court, opposing counsel, my name is Pat McGee. I represent the United States, who is the appellee in this matter. As you know, this case arises out of an appeal of a sentencing order from Judge Rossiter with respect to Carlos Valquier. The only issue at that sentencing hearing was whether or not safety valve applied. Specifically, that would be the fifth prong of safety valve, which is whether or not Mr. Valquier gave a truthful and complete proffer. The district court correctly found that Mr. Valquier did not give a complete and truthful proffer. He stated that, on the record, Mr. Valquier, although he did give information to law enforcement about the conspiracy, he did not give information to the breadth that would be required to award him the safety valve relief. I'm asking that this court affirm that decision. I want to talk a little bit about the plea waiver and the allegation of prosecutorial misconduct, but first I think it's important to talk a little bit about the facts of this case. So, the burden, of course, is on the defendant to prove that they are eligible for safety valve. In this particular case, the defendant offers an affidavit into evidence. In some, the affidavit states, I was honest and truthful with the court and with law enforcement. The United States offers evidence, four pieces of evidence in three forms. The first is the proffered testimony of two co-conspirators who testified against Mr. Valquier's brother in a district court trial, which, as the court is now aware, also was before Judge Rossiter. One of those co-operators, Buende Ramirez, testified about his involvement and, frankly, his involvement, the way he put it, was that he was working underneath the Valquier family. He didn't state that specifically, but he did state that the Valquier's mother bought him a burner cell phone with which he could use to contact the Valquier brothers. He did say the Valquier brothers were giving him rides. He said they rented him a hotel. They rented him a house. He also indicated that Carlos Valquier, on multiple occasions, brought him very large sums of money that he was to sit on in this stash house before Carlos, on the day of their arrest, brought him to a hotel. He was supposedly going to exchange the money for narcotics in a drug transaction. Buende Ramirez also testified that he was instructed by another co-conspirator that once he obtained narcotics, he was to bring them back to the stash house. He was to sit on them, and he was to wait for further instructions so that Carlos and Alfredo, who was convicted in a jury trial, could transport the narcotics to Minnesota. The second form of evidence that I presented was the testimony of Jorge Fernandez, who listened to jailhouse telephone calls of Carlos Valquier. He listened to phone calls on two different occasions. Both were just days before Carlos's second proffer interview with law enforcement. On the first occasion, there was a three-way telephone call between Valquier's mother, Valquier's brother, and Valquier himself, where Valquier's mother told Alfredo, just tell them all you did was give a couple of rides. Now, this is significant because at the proffer interview a couple of days later, this is exactly what Carlos Valquier does. He tells law enforcement, I gave Buende Ramirez a couple of rides. Buende Ramirez paid me for those rides. He does say, yeah, I rented him a place. However, he paid me to do so. Buende Ramirez's testimony is in contradiction to this. Also arising at trial, the testimony of Blanca de Avila, which I proffered to the court, was that Mr. Alfredo Valquier had delivered her a load of narcotics approximately 18 days prior to the day they were all caught. This is significant because she testified that Alfredo was with another individual and that that other individual was very well disguised. She didn't identify him affirmatively as Carlos Valquier in court, though the government is aware, and it is on the record through HSI agent Andy Vincic, in a sidebar to the court, that Blanca de Avila had affirmatively identified Carlos Valquier as that other individual that she had delivered the narcotics to on a previous occasion. That's significant because in Carlos's proffer interview, at no time does he mention that the mother of the Valquiers is giving them a cell phone to do narcotics trade. Nowhere does he mention that the Valquiers are giving him large sums of money in order for a narcotics sale. Nowhere does he mention that Blanca de Avila had received narcotics from him and his brother approximately two weeks prior. So those are the most significant facts from the sentencing hearing itself. Let me ask you this. Did the defendant object to presenting all this testimony by proffer and ask that the witnesses be brought forward to testify live and be subject to cross-examination? I don't recall exactly what the objection is, Your Honor. I do know defense objected to offering this testimony by way of proffer. However, the government was not in receipt of transcripts. The burden was on the defendant to prove their case at a contested safety valve hearing. They were aware of these transcripts. They never requested them. They never offered them themselves. Furthermore, when I gave my synopsis of what had occurred in the trial, Judge Rossiter himself acknowledged that it was, I believe his words were, generally if not entirely accurate synopsis of the testimony at trial. And in doing so, Judge Rossiter effectively took judicial notice of the testimony at trial. Well, I think we have plenty of case law that says that when the sentencing judge was also the trial judge, he or she can rely upon their recollection. So I'm not so concerned about that. But what I am more concerned about is, is these proffers, are they things that were not testified to at trial that this is additional evidence? These were testified to at trial. The proffer of Blanca Avila de Vega that I'm talking about, that was my recollection of the direct trial testimony. And I did include in my record the testimony of Blanca Avila de Vega and Buendia-Ramirez just for the sake of clarity because I did proffer to the court this information and not until the time of appeal that I actually have a physical transcript with which to work. So I did provide that out of fairness. Well, the thing that Valquier seems most upset about is when you said Buendia-Ramirez was calling the shots essentially. I understand that. Apparently that's not accurate. There was a guy above her in the organization who was calling the shots. What's your current view on that? It's an accurate summation, Your Honor. I'm not going to call myself the most articulate person in the world. I will say that when I'm making a summary of the facts that it is accurate. And in this particular case it is accurate that in the relation What I'm looking at this conspiracy is like an onion. We've got multiple layers here, and the guy on top is the outer layer. That's the uncle that defense is referring to who is the actual mastermind of this conspiracy. Also noteworthy. What's accurate about saying Buendia-Ramirez was calling the shots? Because in this particular case, Buendia-Ramirez was in a position of subservience in that the Valquiers were bringing him money, giving him a phone, picking him up from the hotel. He was essentially at their mercy, living in a stash house to hold onto money, to be the most culpable person. Whereas Carlos Valquier, on the other hand, tries to make it as if he is the subservient person in this relationship. So I think the issue is not who is in charge, but rather who is subservient to who in the conspiracy. Like I said, I'm not alleging that Buendia-Ramirez or Carlos Valquier are the mastermind of the conspiracy. In fact, that particular prong of safety valve, being a leader organizer, is not even at issue in this case. What I'm arguing is that Buendia-Ramirez was in a position where the Valquiers were bringing him money, putting him up in a hotel, setting him up to take the fall in a drug transaction, which is ultimately what had occurred. So he's subservient to Valquier in your view? That's my position, Your Honor. I believe that's accurate. Okay, well that's not really consistent with saying that he was calling the shots. I think that's their objection. I understand, Your Honor. And I think the evidence… Maybe Judge Rossiter knew that, and that's why he said it was maybe mostly accurate. Yeah, he did say it was generally if not entirely accurate. Yeah, yeah. So maybe this is where it was not entirely accurate, huh? Perhaps. That said, Judge Rossiter didn't find that there was sufficient evidence in order to deprive Carlos Valquier of safety valve on the basis of incomplete proffer. The incompleteness is more what's at issue here than untruthfulness of the proffer. Now, I would like to get… When you refer to proffer, then, you're talking about the government attorney's statement? In this instance, when I'm referring to proffer, I'm referring to Carlos Valquier's proffer to law enforcement. Oh, his proffer to law enforcement. All right. Yes, Judge. I would like to mention that Carlos Valquier did waive his right. May I continue the thought? Well, I think your time's expired unless there are further questions. I think we… Thank you. …understand your position, and we'll hear rebuttal from Ms. Rahal. Thank you, Judge. Your Honor, general accuracy is not enough in this case. Mr. Valquier is sentenced to five more years than he would have been eligible for under the guideline provision had he received this relief based on the minute details of whether he or his brother provided a ride, whether he or his mother was the one that bought a cell phone for the co-conspirator. He is being held to a high standard where his every word was scrutinized by case agents, by Judge Rossiter, now by this Court. The government should not be permitted to come and off the cuff recount what it generally recalls to be possibly accurate testimony when it could easily have provided accurate and reliable testimony. The Court should disregard the government's attempt to offer that testimony on appeal. To the extent that the Court does review that, it does not support its argument that Mr. Valquier was untruthful. The procedure in this case was improper. Relying on the properly and reliable evidence in this case, Mr. Valquier was truthful and complete. He should have been granted his relief under safety valve, and we ask this Court to please reverse the judgment. Thank you. All right. Very well. Thank you for your argument. The case is submitted, and the Court will file an opinion in due course. Thank you to both counsel. You are excused.